**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| FLORENCE ASLINIA, M.D., | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF KANSAS | ) | Case No.: 2:24-cv-2208 |
| | ) | |
| And | ) | |
| | ) | |
| UNIVERSITY OF KANSAS PHYSICIANS, | ) | |
| INC., | ) | |
|      Defendants. | ) | |

## COMPLAINT

COMES NOW, Plaintiff, Florence Aslinia, M.D., by and through undersigned counsel of record, and for her claims against Defendants University of Kansas and University of Kansas Physicians, Inc., states and alleges the following:

### PARTIES, VENUE AND JURISDICTION

1.      Plaintiff, Florence Aslinia, M.D., is a resident of the state of Kansas.

2.      Defendant, University of Kansas Physicians ("UKP") is a Kansas not-for-profit corporation, with its principal office located at 2330 Shawnee Mission Parkway, Suite 312, Westwood, Kansas; and may be served with process through its registered agent, National Registered Agents, Inc., 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

3.      Defendant, the University of Kansas (the "University"), is an institution of higher education established under the laws of the state of Kansas, and pursuant to Fed. R. Civ. P. 4(j)(2)(A), the University of Kansas may be served through its chief executive officer.

4.      Pursuant to K.S.A. § 76-714, the chief executive officer of the University of Kansas is the Chancellor.

5.      Accordingly, the University of Kansas may be served through Chancellor Douglas A. Gerod, 230 Strong Hall, 1450 Jayhawk Boulevard, Lawrence, Kansas 66045.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that the events and omissions giving rise to Plaintiff's claims occurred in this District, and pursuant to 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practices stated herein occurred in this District.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves federal questions.

8.      Plaintiff timely filed a Charge of Discrimination against the Defendant UKP with the U.S. Equal Employment Opportunity Commission and the Kansas Human Rights Commission on August 16, 2023, and against the University on August 11, 2023.

9.      The U.S. Equal Employment Opportunity Commission issued its Notice of Right to Sue Within 90 Days as to the charge against UKP, which Plaintiff received on March 21, 2024.

10.     The U.S. Department of Justice Civil Rights Division issued its Notice of Right to Sue Within 90 Days as to the charge against the University, which Plaintiff received on April 24, 2024.

11.     Less than 90 days have passed since March 21, 2024, and April 24, 2024, and this lawsuit is timely filed.

## ALLEGATIONS OF FACT

12.     Plaintiff is a licensed physician specializing in gastroenterology.

13.     Plaintiff accepted employment with the University and UKP on or about December 1, 2017, where she worked in the Internal Medicine Department (the "Department").

14.     Within the Department, Plaintiff reported to and was supervised by Mojtaba Olyaee, M.D., Matthias Salathe, M.D., and Eyad Al-hihi, M.D.

15.     At the beginning of her employment, the University and UKP, through Dr. Olyaee and Steven Stites, M.D., charged Plaintiff with the task of establishing a multidisciplinary inflammatory bowel disease ("IBD") clinic within the Department.

16.     The University and UKP, through Dr. Olyaee, promised Plaintiff a directorship if

2

successful in her efforts to open the clinic.

17.     Plaintiff accepted the task and successfully opened the first multidisciplinary IBD clinic in the state of Kansas in July 2018 without defined funding, protected faculty time, or a business plan.

18.     After opening the clinic, Plaintiff initiated and successfully commenced clinical research and trials for the benefit of her patients, the University and UKP.

19.     Thereafter, Plaintiff worked to promote the clinic within the state of Kansas by collaborating with physician liaisons, publishing online, and giving seminars to community stakeholders such as the Crohn's and Colitis Foundation.

20.     Beginning in 2019 and continuing through the termination of her employment in 2023, Plaintiff repeatedly asked the University and UKP, through Dr. Olyaee, that she be promoted to Director, as promised, given her continuing contributions to the IBD clinic.

21.     Similarly situated non-Iranian male colleagues who were either responsible for establishing or charged with operating a specialty clinic were promoted to Director and provided an increase in compensation in connection with that promotion.

22.     Similarly situated non-Iranian male colleagues who were responsible for administrative duties commensurate with those Plaintiff handled for the IBD clinic received supplemental compensation; Plaintiff never received supplemental compensation for her contributions to the IBD clinic.

23.     In December 2018, Drs. Al-hihi and Salathe issued Plaintiff a write-up related to her job performance, entitled "list of concerns," identifying various complaints regarding her performance.

24.     Similarly-situated non-Iranian male colleagues were not "written up" or otherwise critiqued for similar conduct/complaints.

3

25.     At that time, Plaintiff made an initial complaint to Chief Medical Officer Dr. Steven Stites and the Chief of Staff, Louis Wetzel, that Drs. Salathe and Al-hihi were treating her differently than her non-Iranian male colleagues.

26.     Thereafter, Drs. Salathe and Al-hihi continued to treat Plaintiff differently, with the behavior increasing in frequency and severity after Plaintiff reported her concerns to Drs. Stites and Wetzel.

27.     Drs. Salathe and Al-hihi routinely and repeatedly stated they did not have a favorable view of Plaintiff, her "behavior" or her "approach," and referred to her regularly as a "troublemaker."

28.     Often, and throughout the term of her employment, Drs. Salathe and Al-hihi's criticisms and abrasive responses came at group meetings, in front of Plaintiff's peers, and in response to Plaintiff voicing an opinion that was different than their own or came when she questioned a decision by one of them. For example, during one meeting, Dr. Al-hihi raised his voice in response to a comment Plaintiff made, accusing Plaintiff of "considering him stupid." When Plaintiff expressed her opinions, Drs. Salathe and Al-hihi told her she "talked too much" and instructed her to "be quiet" and to "stop talking." Dr. Al-hihi told Plaintiff that they let "doctors like [her] go."

29.     In contrast, similarly-situated non-Iranian male colleagues were allowed to freely participate in meetings and voice their opinions without criticism.

30.     Plaintiff was also subjected to heightened scrutiny for purported violations of policies and interaction with nursing staff.

31.     At times, critiques were delivered to Plaintiff by email, accusing her of various misdeeds, including but not limited to the violation of policies and improper interaction with nursing staff.

32.     Complaints made by nurses and other support staff regarding non-Iranian male physicians were not addressed the same way and did not result in similar criticisms.

33.     During her employment with UKP and the University, UKP and the University –
through Drs. Salathe and Al-hihi – selectively enforced policies against Plaintiff while similarly-situated
non-Iranian male colleagues were permitted to repeatedly violate policies without any repercussions.

34.     In at least one case, UKP and the University affirmatively protected Plaintiff's non-
Iranian male colleague from negative professional implications of policy violations, including work to
avoid standard of care reports/determinations related to the consequences of policy violations.

35.     Dr. Al-hihi told Dr. Olyaee that he had "hired too many Iranians" in the Department.

36.     Many times, complaints by Drs. Salathe and Al-hihi regarding Plaintiff were made to
Dr. Olyaee, who was told to address the issue with Plaintiff.

37.     This resulted in numerous instances where Dr. Olyaee would pull Plaintiff aside to
discuss whatever issue had been raised. During those conversations, Dr. Olyaee would acknowledge
the differential treatment, noting that Plaintiff had to do better because she was Iranian.

38.     On information and belief, other female gastroenterologists employed by the
University and UKP experienced similar hostile treatment and harassment.

39.     In fact, four of seven female gastroenterologists in Plaintiff's group when she
commenced employment left the Department; with another departing immediately prior to the date
Plaintiff commenced employment.

40.     Drs. Salathe and Al-hihi scheduled meetings with Plaintiff at times when she was
booked with patients for clinic visits or procedures, requiring her to cancel and reschedule patient
appointments and procedures. In contrast, meetings were scheduled at times conducive to the
schedules of her similarly-situated non-Iranian male colleagues such that they were not required to
cancel procedures or other commitments.

41.     Drs. Salathe and Al-hihi held meetings where they berated Plaintiff in front of her
colleagues when they were aware Plaintiff would be required to return immediately to her patients,

including her responsibilities to perform sensitive procedures.

42.     The behavior described herein was severe, pervasive, and created a hostile work environment for Plaintiff.

43.     On January 11, 2023, Drs. Salathe and Al-hihi scheduled another meeting in the middle of a day where Plaintiff was scheduled to be performing endoscopy procedures. In response, Plaintiff asked that the meeting be set at another time. Drs. Salathe and Al-hihi refused to reschedule the meeting.

44.     The same day,  Dr. Al-hihi informed Plaintiff that he had the power to fire her.

45.     Given the abrasive and hostile treatment of increasing intensity in the preceding weeks and prior comments by Dr. Al-hihi that they let doctors like Plaintiff go, Plaintiff believed that Drs. Salathe and Al-hihi intended to either terminate her employment or non-renew her faculty/physician contract in March 2023.

46.     If UKP and/or the University terminated Plaintiff, or decided not to renew her contract, Plaintiff would be required to disclose that information in applications and on forms related to licensure and hospital privileges which would negatively impact her professional career for years in the future.

47.     In consideration of her belief that termination was imminent, the negative repercussions termination would have on future licensure and credentialing with subsequent employers, clinics and hospitals, coupled with the continued severe and pervasive harassment and its effect on her ability to properly and safely treat her patients, Plaintiff was compelled to resign her employment with the University and UKP.

48.     Plaintiff resigned her employment on January 11, 2023.

49.     On information and belief, Drs. Salathe and Al-hihi engaged in similar conduct directed at other female practitioners and administrative staff.

50.     On information and belief, female practitioners in the department have complained to the University and UKP regarding hostile and discriminatory treatment by Drs. Salathe and Al-hihi.

51.     On information and belief, the University and UKP were or should have been aware of complaints by female practitioners working with Drs. Salathe and Al-hihi, but Defendants have failed to take corrective action.

52.     On information and belief, other female practitioners have complained about hostile treatment, harassment, and discrimination by male physicians; but the University and UKP have failed to investigate those complaints and/or take disciplinary action related to those male physicians. This has created an environment of tolerance toward harassment and discrimination against women in the workplace, rather than enforcement of the rights of minority women employed by the University and UKP, and demonstrates reckless, willful, and wanton conduct by the University and UKP with respect to the equal employment rights of minority women.

## COUNT I – GENDER DISCRIMINATION – HOSTILE WORK ENVIRONMENT
## 42 U.S.C. § 2000e-2

53.     Plaintiff incorporates the allegations of paragraphs 1 through 52 of the Complaint as if fully stated herein.

54.     Plaintiff is female and, as such, is a member a class protected by 42 U.S.C. §2000e-2.

55.     The University and UKP are "employers" as defined by 42 U.S.C. §2000e; during the relevant timeframe, the University and UKP employed Plaintiff.

56.     Over the course of her employment with the University and UKP, Plaintiff was subjected to a work environment permeated by severe and pervasive discriminatory intimidation, ridicule, and insult, as outlined in paragraphs 15 through 44 of this Complaint, which are incorporated herein by reference.

57.     The University and UKP's treatment of Plaintiff was so hostile, severe, and pervasive that it altered the terms and conditions of her employment and created an abusive work environment.

58.     The University and UKP's treatment of Plaintiff interfered with her work performance, including her ability to perform procedures for patients.

59.     The University and UKP's hostile treatment of Plaintiff was because she is a woman.

60.     The reasons proffered for the University and UKP's disparate and hostile treatment of the Plaintiff were pretextual.

61.     The University and UKP's conduct outlined above violated 42 U.S.C. §2000e-2 and constituted a reckless, willful, and wanton violation of Plaintiff's rights.

62.     As a result of the discrimination by the University and UKP, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor for damages including but not limited to back pay, front pay, lost benefits, other economic loss, emotional distress, mental anguish, punitive damages, attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, and such other relief as the court deems just and proper.

## COUNT II – GENDER DISCRIMINATION – CONSTRUCTIVE DISCHARGE
## 42 U.S.C. § 2000e-2

63.     Plaintiff incorporates the allegations of paragraphs 1 through 62 of the Complaint as if fully stated herein.

64.     Plaintiff is female and, as such, is a member a class protected by 42 U.S.C. §2000e-2.

65.     The University and UKP are "employers" as defined by 42 U.S.C. §2000e; during the relevant timeframe, the University and UKP employed Plaintiff.

66.     Over the course of her employment with the University and UKP, Plaintiff was subjected to a work environment permeated by severe and pervasive discriminatory intimidation, ridicule, and insult, as outlined in paragraphs 15 through 44 of this Complaint, which are incorporated herein by reference.

67.     The University and UKP's treatment of Plaintiff was so hostile, severe, and pervasive

8

that it altered the terms and conditions of her employment and created an abusive work environment.

68.     The University and UKP's treatment of Plaintiff interfered with her work performance, including her ability to perform procedures for patients as outlined above.

69.     The University and UKP's hostile treatment of Plaintiff was because she is a woman.

70.     The reasons proffered for the University and UKP's disparate and hostile treatment of the Plaintiff were pretextual.

71.     The discrimination and hostile treatment was so severe and pervasive that a reasonable person in her position would have felt compelled to resign.

72.     Plaintiff was constructively discharged from employment when she resigned her employment because of the discrimination and hostile treatment she experienced, as described herein.

73.     The University and UKP's conduct outlined above violated 42 U.S.C. §2000e-2 and constituted a reckless, willful, and wanton violation of Plaintiff's rights.

74.     As a result of the discrimination by the University and UKP, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor for damages including but not limited to back pay, front pay, lost benefits, other economic loss, emotional distress, mental anguish, punitive damages, attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, and such other relief as the court deems just and proper.

## COUNT III – GENDER DISCRIMINATION – ADVERSE EMPLOYMENT ACTION
### 42 U.S.C. § 2000e-2

75.     Plaintiff incorporates the allegations of paragraphs 1 through 74 of the Complaint as if fully stated herein.

76.     Plaintiff is female and, as such, is a member a class protected by 42 U.S.C. §2000e-2.

77.     The University and UKP are "employers" as defined by 42 U.S.C. §2000e; during the

relevant timeframe, the University and UKP employed Plaintiff.

78.     Plaintiff suffered an adverse employment action, in that the University and UKP refused to promote her to a Director position.

79.     Plaintiff was not promoted to the position of Director because she is a woman.

80.     On information and belief, other women in Plaintiff's position have been denied Director positions after opening and/or operating a specialty clinic similar to Plaintiff's efforts with respect to the IBD clinic.

81.     The explanations offered by the University and UKP for the failure to promote her to Director are pretextual.

82.     The University and UKP engaged in the conduct described herein in reckless disregard for the rights of Plaintiff and was otherwise in wanton and willful violation of Title VII.

83.     As a result of the discrimination by the University and UKP, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor for damages including but not limited to back pay, front pay, lost benefits, other economic loss, emotional distress, mental anguish, punitive damages, attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, and such other relief as the court deems just and proper.

## COUNT IV – NATIONAL ORIGIN DISCRIMINATION – HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 2000e-2

84.     Plaintiff incorporates the allegations of paragraphs 1 through 83 of the Complaint as if fully stated herein.

85.     Plaintiff is Iranian and, as such, is a member a class protected by 42 U.S.C. §2000e-2.

86.     Defendants are "employers" as defined by 42 U.S.C. §2000e; during the relevant timeframe, Defendants employed Plaintiff.

87.     Over the course of her employment with Defendants, Plaintiff was subjected to a work environment permeated by severe and pervasive discriminatory intimidation, ridicule, and insult, as outlined in paragraphs 15 through 44 of this Complaint, which are incorporated herein by reference.

88.     Defendants' treatment of Plaintiff was so hostile, severe, and pervasive that it altered the terms and conditions of her employment and created an abusive work environment.

89.     Defendants' treatment of Plaintiff interfered with her work performance, including her ability to perform procedures for patients.

90.     Defendants' hostile treatment of Plaintiff was because she is from Iran.

91.     The reasons proffered for Defendants' disparate and hostile treatment of Plaintiff were pretextual.

92.     Defendants' conduct outlined above violated 42 U.S.C. §2000e-2 and constituted a reckless, willful, and wanton violation of Plaintiff's rights.

93.     As a result of the discrimination by Defendants, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor for damages including but not limited to back pay, front pay, lost benefits, other economic loss, emotional distress, mental anguish, punitive damages, attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, and such other relief as the court deems just and proper.

## COUNT V – NATIONAL ORIGIN DISCRIMINATION – CONSTRUCTIVE DISCHARGE
## 42 U.S.C. § 2000e-2

94.     Plaintiff incorporates the allegations of paragraphs 1 through 93 of the Complaint as if fully stated herein.

95.     Plaintiff is Iranian and, as such, is a member a class protected by 42 U.S.C. §2000e-2.

96.     Defendants are "employers" as defined by 42 U.S.C. §2000e; during the relevant

timeframe, Defendants employed Plaintiff.

97.     Over the course of her employment with Defendants, Plaintiff was subjected to a work environment permeated by severe and pervasive discriminatory intimidation, ridicule, and insult, as outlined in paragraphs 15 through 44 of this Complaint, which are incorporated herein by reference.

98.     Defendants' treatment of Plaintiff was so hostile, severe, and pervasive that it altered the terms and conditions of her employment and created an abusive work environment.

99.     Defendants' treatment of Plaintiff interfered with her work performance, including her ability to perform procedures for patients as outlined above.

100.    Defendants' hostile treatment of Plaintiff was because she is Iranian.

101.    The reasons proffered for Defendants' disparate and hostile treatment of Plaintiff were pretextual.

102.    The discrimination and hostile treatment was so severe and pervasive that a reasonable person in her position would have felt compelled to resign.

103.    Plaintiff was constructively discharged from her employment when she resigned her employment because of the discrimination and hostile treatment she experienced, as described herein.

104.    Defendants' conduct outlined above violated 42 U.S.C. §2000e-2 and constituted  a reckless, willful, and wanton violation of Plaintiff's rights.

105.    As a result of the discrimination by Defendants, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor for damages including but not limited to back pay, front pay, lost benefits, other economic loss, emotional distress, mental anguish, punitive damages, attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, and such other relief as the court deems just and proper.

**COUNT VII – NATIONAL ORIGIN DISCRIMINATION – ADVERSE EMPLOYMENT**

**ACTION**
**42 U.S.C. § 2000e-2**

106.     Plaintiff incorporates the allegations of paragraphs 1 through 105 of the Complaint as if fully stated herein.

107.     Plaintiff is Iranian and, as such, is a member a class protected by 42 U.S.C. §2000e-2.

108.     Defendants are "employers" as defined by 42 U.S.C. §2000e; during the relevant timeframe, Defendants employed Plaintiff.

109.     Plaintiff suffered an adverse employment action, in that Defendants refused to promote her to a Director position.

110.     Plaintiff was not promoted to the position of Director because she is Iranian.

111.     The explanations offered by Defendants for the failure to promote her to Director are pretextual.

112.     Defendants engaged in the conduct described herein in reckless disregard for the rights of Plaintiff and was otherwise in wanton and willful violation of Title VII.

113.     As a result of the discrimination by Defendants, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor for damages including but not limited to back pay, front pay, lost benefits, other economic loss, emotional distress, mental anguish, punitive damages, attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, and such other relief as the court deems just and proper.

**RETALIATION**
**42 U.S.C. § 2000e-3**

114.     Plaintiff incorporates the allegations of paragraphs 1 through 113 of the Complaint as if fully stated herein.

115.     Defendants are "employers" as defined by 42 U.S.C. §2000e; during the relevant

timeframe, Defendants employed Plaintiff.

116.    In December 2018, Plaintiff reported, complained of, and opposed the discriminatory treatment by Drs. Salathe and Al-hihi by reporting the issue to Drs. Stites and Wetzel.

117.    On information and belief, Dr. Stites, Dr. Wetzel, or another employee of Defendants informed Drs. Salathe and Al-hihi of her complaint.

118.    Thereafter, Drs. Salathe and Al-hihi engaged in a pattern of retaliatory behavior toward Plaintiff, as detailed in paragraphs 15 through 44 herein.

119.    Drs. Salathe and Al-hihi engaged in the above-referenced conduct because Plaintiff complained to Drs. Stites and Wetzel that Drs. Salathe and Al-hihi were treating her differently than her non-Iranian male colleagues.

120.    As a result of the retaliation by Defendants, Plaintiff has suffered damages, including economic and non-economic losses.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor for damages including but not limited to back pay, front pay, lost benefits, other economic loss, emotional distress, mental anguish, punitive damages, attorney-fees, expert witness fees and other costs and expenses of litigating these claims, interest, and such other relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to D. Kan. Rule 40.2(a), Plaintiff hereby requests a trial by jury on all counts and allegations alleged in this Complaint and, further, requests that trial by held in Kansas City, Kansas.

Respectfully submitted,
**Fagan & Emert, LLC**
/s/Jennifer R. Johnson
Jennifer R. Johnson          #22096
800 New Hampshire St., Ste. 110
Lawrence, KS 66044
(785) 331-0300 – Telephone
(785) 331-0303 – Facsimile
jjohnson@faganemert.com
Attorney for Plaintiff